UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Michael Klinkhammer,

                Plaintiff,

vs.

Anishinabe Legal Services,
Inc., and the Northwest
Minnesota Foundation,

                Defendants.      Civ. No. 08-6320 (JNE/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Motion of the Plaintiff Michael Klinkhammer to Remand this matter to the Minnesota District Court for Cass County. See, Docket No. 8. A Hearing on the Motion was conducted on March 27, 2009, at which time, the Plaintiff appeared by Michael R. Ruffenach, Esq.; the Defendant Anishinabe Legal Services, Inc. ("Anishinabe"), appeared by Peter J. Nickitas, Esq.; and the Defendant

Northwest Minnesota Foundation ("Northwest") appeared by V. John Ella, Esq. For reasons which follow, we recommend that the Plaintiff's Motion be denied.

## II.  Factual and Procedural History

In this action, which was commenced in the Minnesota District Court for Cass County, the Plaintiff brings claims against the Defendants for defamation; wrongful termination; breach of contract; and employment discrimination under the Minnesota Human Rights Act, Minnesota Statutes Sections 363A.01 et seq., and the Civil Rights Act of 1991, Title 42 U.S.C. §2000e-1 et seq. See, Complaint, Docket No. 1-2, at ¶¶1-28. On December 10, 2008, the Defendants removed the action to this Court. See, Docket No. 1. The facts, as pertinent to the Motion before us, may be briefly summarized.

On May 17, 2004, the Plaintiff was hired by Anishinabe as a staff attorney and, on January 31, 2005, he was promoted to the position of Executive Director. See, Complaint, supra at ¶6. According to the Plaintiff, during his tenure as the Executive Director, Anishinabe increased its attorneys' salaries, improved the quality of its grant applications, improved its compliance with Federal regulatory requirements and, as a result of an increase in its annual budget, hired additional staff, and remodeled its

building.[1]  Id. at ¶¶6A-G, 6I.  In addition, the Plaintiff maintains that he successfully challenged audit findings from the United States Department of Justice, which could have resulted in the loss of Anishinabe's Federal funding.  Id. at ¶6J.

As urged by the Plaintiff, despite those accomplishments, on December 27, 2007, Anishinabe hired Northwest to conduct an organizational assessment.  Id. at ¶25.  The assessment was conducted over two (2) half-days, and included interviews with Anishinabe's staff, although the Plaintiff was not interviewed.  Id. at ¶27.  On March 16, 2008, during a meeting of Anishinabe's Board of Directors ("the Board"), Northwest's Organizational Excellence Assessment ("OEA") was discussed.  Id. at ¶7.  During the course of that meeting, which was attended by Anishinabe employees, the details of the OEA were revealed.  Id.  According to the Plaintiff, the OEA allegedly contained numerous falsehoods, including assertions that the Plaintiff was responsible for grant management, that grant applications failed to acquire adequate funding, and were submitted late, that the Plaintiff was uncommunicative, that the Plaintiff failed to inform Anishinabe's staff of changes in Federal regulatory

---

[1]In order to receive a grant from the Federal Legal Services Corporation, Anishinabe was required to comply with Federal regulatory requirements.  See, Complaint, supra at ¶6B.

requirements, and that Anishinabe might be responsible for the legal fees incurred in challenging the audit findings. Id. at ¶¶8A-F.

Thereafter, on March 20, 2008, the Board stripped the Plaintiff of his authority to take personnel actions against Anishinabe employees. Id. at ¶16.[2] On May 9, 2008, the Board held a meeting in order to determine whether to terminate the Plaintiff's employment.[3] Id. When the Plaintiff learned about the Board meeting, he submitted a letter to the Board Chairman, specifying the terms upon which the Plaintiff would remain as Executive Director, "including the necessary authority to take appropriate personnel action regarding employees." Id. at ¶17. The letter also stated that the Plaintiff would resign unless the Board agreed to the proposed terms. Id. The Board did not agree to the proposed terms, and accordingly, the Plaintiff's resignation was effective on May 9, 2008.[4] Id. at ¶18. After exhausting his annual leave, the Plaintiff's employment officially ended on July 2, 2008. Id.

---

[2] In his Complaint, the Plaintiff inadvertently numbered two (2) paragraphs as paragraph 16.

[3] Anishinabe admits that the Board held a meeting, but does not specify the topics discussed. See, Anishinabe's Answer, supra at ¶30.

[4] The Plaintiff argues that the Board's refusal to return his authority over personnel decisions resulted in his constructive termination. See, Complaint, supra at ¶18.

On November 3, 2008, the Plaintiff filed this action in the Minnesota District Court for Cass County, see, Complaint, supra, and, on December 9, 2008, the Defendants removed the action to this Court, pursuant to the diversity of the parties' citizenship. See, Notice of Removal, Docket No. 1, at 1-2; Title 28 U.S.C. §§1332 and 1441. The Plaintiff now moves to remand this matter to State Court. See, Docket No. 8. According to the Plaintiff, the parties are not diverse, since he was a resident of the State of Minnesota when the allegedly illegal actions occurred. See, Plaintiff's Memorandum in Support, Docket No. 10, at 1, 4. In a joint response, the Defendants argue that the parties are diverse, because the Plaintiff was a citizen of the State of Montana when he filed his Complaint. See, Defendants' Memorandum in Opposition, Docket No. 13, at 1-3. With the foregoing as our backdrop, we turn to the parties' arguments.

### III.  Discussion

A.  Standard of Review.  In relevant part, Title 28 U.S.C. §1441(a), which governs the removal of State Court matters to Federal Court, provides as follows:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the

>district and division embracing the place where such action
>is pending.

Following removal, a case will be remanded to State Court "'[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction * * *.'" Lundeen v. Canadian Pacific Railway Co., 342 F. Supp.2d 826, 828 (D. Minn. 2004), quoting Title 28 U.S.C. §1447(c). "In reviewing a Motion to Remand, the District Court must resolve all doubts in favor of a remand to State Court, and the party opposing a remand bears the burden of establishing Federal jurisdiction." Peterson v. BASF Corporation, 12 F. Supp.2d 964, 968 (D. Minn. 1998), citing In re Business Men's Assurance Co. of America, 992 F.2d 181, 183 (8th Cir. 1993); Masepohl v. American Tobacco Co., 974 F. Supp. 1245, 1249 (D. Minn. 1997).

Diversity jurisdiction is conferred by Title 28 U.S.C. §1332(a), which provides, in pertinent part, as follows:

>The district courts shall have original jurisdiction of all
>civil actions where the matter in controversy exceeds the
>sum or value of $75,000 * * * and is between * * * citizens
>of different States[.][5]

---

[5]The Plaintiff also argues that the amount in controversy is not met since his damages only reach approximately $50,000.00. See, Plaintiff's Reply Memorandum, Docket No. 17, at 2-3. However, according to the Complaint, the Plaintiff requests actual damages and special damages each in an amount exceeding $50,000.00 from
(continued...)

"For purposes of diversity jurisdiction, the terms domicile and citizenship are synonymous." Yeldell v. Tutt, 913 F.2d 533, 537 (8th Cir. 1990)[internal quotations omitted], citing Rodriguez-Diaz v. Sierra-Martinez, 853 F.2d 1027, 1029 (1st Cir. 1988); see also, Dunlap by Wells v. Buchanan, 741 F.2d 165, 167 (8th Cir. 1984); Russell v. New Amsterdam Cas. Co., 325 F.2d 996, 998 (8th Cir. 1964).

"To establish domicile, an individual must both be physically present in the state and have the intent to make his home there indefinitely." Id. [citations omitted]; see also, Altimore v. Mount Mercy College, 420 F.3d 763, 768 (8th Cir. 2005); Minnesota Min. and Mfg. Co. v. Kirkevold, 87 F.R.D. 317, 320-21 (D. Minn. 1980). However, "[i]ntention to remain there permanently* * * is not necessary." Id., citing

---

(...continued)
each Defendant. See, Complaint, supra at pp. 17-18. Accordingly, on the basis of the Complaint, we find that the amount in controversy has been met to establish diversity jurisdiction. See, Hall v. EarthLink Network, Inc., 396 F.3d 500, 506 (2nd Cir. 2005) ("Generally, for purposes of diversity jurisdiction, the amount in controversy is established as of the date of the complaint[.]"); Iowa Lamb Corp. v. Kalene Industries, Inc., 871 F. Supp. 1149, 1155 (N.D. Iowa 1994)("Specifically, when federal subject matter jurisdiction is based on diversity and amount in controversy, the amount in controversy must be determined from an examination of the complaint at the time it was filed."), citing, in part, Horton v. Liberty Mut. Ins. Co., 367 U.S. 348, 353 (1961); see also, Conrad Associates v. Hartford Acc. & Indem. Co., 994 F.Supp. 1196, 1198 (N.D. Cal. 1998)(noting that "amount in controversy includes claims for general and special damages[.]"), citing Richmond v. Allstate Ins. Co., 897 F.Supp. 447 (S.D. Cal. 1995) and Miller v. Michigan Millers Ins. Co., 1997 WL 136242 (N.D. Cal., March 12, 1997).

Blakemore v. Mo. Pac. R.R. Co., 789 F.2d 616, 618 (8th Cir. 1986).  "Once an individual has established his domicile, he remains domiciled there until he legally acquires a new domicile."  Id. [citation omitted].

"Whether diversity of citizenship exists is determined at the time the suit is filed -- not when the cause of action arose."  Altimore v. Mount Mercy College, supra at 768, citing Yeldell v. Tutt, supra at 537; see also, Associated Ins. Management Corp. v. Arkansas General Agency, Inc., 149 F.3d 794, 796 (8th Cir. 1998)("[W]e determine diversity of citizenship at the time an action is filed."), citing Sheehan v. Gustafson, 967 F.2d 1214, 1215 (8th Cir. 1992).  "The district court's 'determination of citizenship for the purpose of diversity is a mixed question of law and fact, but mainly fact.'"  Id., quoting Blakemore v. Mo. Pac. R.R. Co., supra at 618.

  B. Legal Analysis. The Plaintiff has repeatedly asserted that he intends to return to Minnesota as soon as he secures employment in that State.[6]  Id. at ¶6.  Despite the Plaintiff's asserted desire to return to Minnesota at some future date, we conclude that he was a citizen of Montana, when the action was commenced.

---

[6]The Plaintiff applied for a 2009 Beltrami County Public Defense Contract, see, First Affidavit of Michael Klinkhammer ("Klinkhammer Aff."), Docket No. 9, at ¶6, however, the Plaintiff was denied the Contract in January of 2009.  See, Declaration of V. John Ella ("Ella Decl."), Docket No. 14, at ¶2.

As a threshold matter, the Plaintiff contends that he is a citizen of Minnesota because he was bona fide resident of Minnesota when "all the conduct occurred as it relates to the cause of action arose." Plaintiff's Memorandum, supra at 4. Despite the Plaintiff's argument, he misstates the standard employed when determining citizenship for diversity jurisdiction purposes. As noted, citizenship for diversity purposes "is determined at the time the suit is filed -- not when the cause of action arose." Altimore v. Mount Mercy College, supra at 768; see also, Associated Ins. Management Corp. v. Arkansas General Agency, Inc., supra 796; Sheehan v. Gustafson, supra at 1215. Accordingly, we turn to consider the Plaintiff's citizenship, when the action was commenced.[7]

---

[7] We note that the determination of when an action has commenced differs in Federal and State Courts. See, Rule 3, Federal Rules of Civil Procedure ("A civil action is commenced by filing a complaint with the court."); cf., Medalen v. Tiger Drylac U.S.A., Inc., 269 F. Supp.2d 1118, 1124 (D. Minn. 2003)("Under Minnesota law, an action is commenced upon the service of process, irrespective of when the Complaint was filed."), citing, in part, McKenzie v. Lunds, Inc., 63 F. Supp.2d 986, 1001-02 (D. Minn. 1999), citing, in turn, Rule 3.01, Minnesota Rules of Civil Procedure. Moreover, "'Federal courts must honor state court rules governing commencement of civil actions when an action is first brought in state court * * * [.]'" Kyllo v. Farmers Co-op Co. of Wanamingo, Minn., 723 F. Supp. 1332, 1335 (D. Minn. 1989), quoting Winkels v. George A. Hormel & Co., 874 F.2d 567, 570 (8th Cir. 1989)[citations omitted]. Since this action was originally filed in the Minnesota District Court for Cass County, our determination of when this action commenced would be governed by Minnesota law.

(continued...)

As we have noted, an individual must be physically present in a State to establish domicile. See, Altimore v. Mount Mercy College, supra at 768; Yeldell v. Tutt, supra at 537. By no later than November 3, 2008, when the Plaintiff personally executed his Complaint in State Court, he had moved to Montana, and he employed his residential address, in Missoula, Montana. See, Complaint, Docket No. 1-2, at p. 19 of 19. The Plaintiff's residence in Montana, as of that date, has been incontrovertibly established. More recently, the Plaintiff's supporting Affidavits were signed, and notarized, in Missoula County, Montana. See, First Klinkhammer Aff., supra; Plaintiff's Reply Memorandum, Second Affidavit of Michael Klinkhammer ("Second Klinkhammer Aff."). Accordingly, we find that the Plaintiff has had a physical presence in Montana since at least the inception of this case.

However, "mere presence in a new location does not effect a change of domicile; it must be accompanied with the requisite intent." Coury v. Prot, 85 F.3d 244, 250 (5th Cir. 1996); Preston v. Tenent Healthsystem Memorial Medical Center,

---

(...continued)
    Nevertheless, we find that the Plaintiff is a Montana citizen since the time he filed his Complaint, as well as at the time that service of process was effected upon the Defendants, for the Plaintiff had moved to Montana, and had no current plan to return to Minnesota. See, Complaint, supra at p. 18 (dated November 1, 2008); Joint Defendants' Notice of Removal, Docket No. 1-1, at ¶1 ("On or about November 17, 2008, Plaintiff provided notice of its Complaint upon Defendants.").

Inc., 463 F. Supp.2d 583, 592 (E.D. La. 2006)("Residence establishes prima facie indication of domicile, but it must be accompanied by an intent to remain in that state."), aff'd, 485 F.3d 804 (5th Cir. 2007), citing Stine v. Moore, 213 F.2d 446, 448 (5th Cir. 1954). To acquire a new domicile, an individual need not intend to live in the new State permanently, but need only have "an intention to remain there indefinitely, or the absence of any intention to go elsewhere." St. Onge v. McNeilus Truck and Mfg., Inc., 645 F. Supp. 280, 282 (D. Minn. 1986), citing Holmes v. Sopuch, 639 F.2d 431, 433 (8th Cir. 1981); see also, Janzen v. Goos, 302 F.2d 421, 425 (8th Cir. 1962)("Intention to live permanently at the claimed domicil is not required."), quoting Spurgeon v. Mission State Bank, 151 F.2d 702, 705-06 (8th Cir. 1945), cert. denied, 327 U.S. 782 (1946); Ellis v. Southeast Const. Co., 260 F.2d 280, 281 (8th Cir. 1958) (same); see also, Perry v. Pogemiller, 16 F.3d 138, 140 (7th Cir. 1993)(An individual "'need not intend to remain permanently at the new domicile; it is enough that he intends to make the new state his home and that he has no present intention of going elsewhere.'")

The Plaintiff has repeatedly asserted that he has no intention of becoming a Montana citizen, and that he plans to return to Minnesota after obtaining employment. However, "subjective statements of intent are given little credit in determining a

party's domicile." Marcotte v. State Farm Fire & Cas. Co., 4 F. Supp.2d 1280, 1283 (D. Kan. 1998); Willis v. Westin Hotel Co., 651 F. Supp. 598, 601 (S.D.N.Y. 1986) ("Although intent is crucial to domicile, mere subjective statements of affiliation with a particular state or of intent to make it one's home, of course, cannot suffice for a finding of state citizenship if such statements are belied by objective indicia of actual residence and intent."). Moreover, "[a] 'floating intention' to return to a former domicile does not prevent the acquisition of a new domicile." Crowley v. Glaze, 710 F.2d 676, 678 (10th Cir. 1983); see also, Valentin v. Hospital Bella Vista, 254 F.3d 358, 367 (1st Cir. 2001)("An amorphous desire to relocate from one place to another at an indeterminate future date does not suffice to effect a change of domicile.")[citation omitted]; Chaara v. Intel Corp., 410 F. Supp.2d 1080, 1091-92 (D. N.M. 2005)("A floating intention * * * to the time of one's stay in a new state or the time of one's return to an old residence" does not prevent an individual from acquiring a new domicile.), aff'd, 245 Fed.Appx. 784 (10th Cir. 2007), citing Jones v. Kyle, 190 F.2d 353, 355 (10th Cir. 1951), cert. denied, 342 U.S. 886 (1951). Thus, despite the Plaintiff's stated intentions, his actions -- i.e. his decision to live and work in Montana

-- and his failure to provide any definite time frame for his return to Minnesota, reveal that his **current** intention is to reside in Montana indefinitely.[8]

Indefinite simply denotes the circumstance of having no exact limits, and does not connote some intention to remain situated for an extended period of time.[9] For example, a person who leaves the State of his or her citizenship for vacation purposes, would not be considered as having indefinitely left that State, as his or her return date would have a fairly definite limit, as would be the case of a military serviceman who was deployed in a foreign war zone, a professional who is on a sabbatical leave for a fixed period of time, and the like. Unlike those circumstances, the Plaintiff has left Minnesota, but may return if he finds suitable employment, but he has no definite

---

[8]The Plaintiff also argues that he would have never left Minnesota but for the Defendants actions. See, Plaintiff's Memorandum in Support, supra at 4. However, the Plaintiff's motives for moving to Montana are immaterial for determining domicile. See, Ellis v. Southeast Const. Co., 260 F.2d 280, 281 (8th Cir. 1958)("If a person capable of making his choice honestly regards a place as his present home, the motive prompting him is immaterial.")[citations omitted]; Torres Vazquez v. Commercial Union Ins. Co., 417 F.Supp.2d 227, 234 (D. P.R. 2006)("'It has long been the rule that motive for the change in residence is irrelevant in determining domicile.'"), quoting Hawes v. Club Ecuestre El Commandante, 598 F.2d 698, 701 (1st Cir. 1979).

[9]As but one example, the Oxford English Dictionary Online defines "indefinite" to mean: "1. Without distinct limitation of being or character; having no clearly defined or determined character; indeterminate, vague, undefined. 2. Of undetermined extent, amount or number, unlimited. * * *."

duration to his stay in Montana, where he currently lives and works, and where he will do so "indefinitely." Nor does the Plaintiff suggest that the duration of his residence in Montana is fixed, or subject to any specific time limitation. See, e.g., Chaara v. Intel Corp., 410 F. Supp.2d 1080, 1097 (D. N.M. 2005)(Finding the plaintiff was a citizen of Colorado for diversity purposes, and noting that "[the plaintiff's] intention to return to New Mexico appears to be little more than a floating intention, indefinite as the duration of his stay in Colorado and the time of his return to New Mexico."), aff'd, 245 Fed.Appx. 784, 2007 WL 2358670 (10th Cir., August 20, 2007). Given these facts, we find that the Plaintiff is an indefinite resident of Montana.

    Of course, when determining an individual's intent for the purposes of domicile, Courts may look at "where the litigant exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family."[10]  Coury v. Prot, supra at 251 [citations

---

[10] The Plaintiff wrongly asserts that the records introduced by the Defendants, including the Plaintiff's past employment, voting, and residency records, are irrelevant. See, Coury v. Prot, 85 F.3d 244, 251 (5th Cir. 1996). In addition, the Plaintiff argues that certain other records should be stricken from the Record. Id.; see also, Ella Decl., supra, Exhibit 2; Second Declaration of Peter J. Nickitas ("Second Nickitas Decl."), Docket No. 15, Exhibit 4. However, we have not relied on those
(continued...)

omitted]. At the Hearing, the Plaintiff argued that he is a Minnesota citizen because his homestead is in Minnesota. The Defendants contend that the Plaintiff has waived his homestead rights because he no longer occupies his Minnesota residence, he intends to sell it, and he currently rents that residence to tenants.

Under Minnesota Statutes Section 510.01, a home occupied by the owner is considered his homestead. Moreover, an owner's temporary absence, or his decision to rent the homestead to tenants, does not constitute abandonment. See, Wilson v. First Nat. Bank of Mankato, 60 N.W.2d 69, 70 (Minn. 1953)(determining that the owner may rent portions of the homestead without abandoning his homestead); Liebermann Music Co. v. Hagen, 404 N.W.2d 290, 292 (Minn. App. 1987) ("[T]emporary absences from the homestead do not constitute an abandonment."), citing Cysewski v. Steingraber, 24 N.W.2d 266, 272 (Minn. 1946). However, if an owner ceases to occupy the "homestead for more than six consecutive months the owner shall be deemed to have abandoned the same unless, within such period," the owner files notice with the county recorder "describing the premises and claiming the same as the owner's homestead[.]" Minnesota Statutes Section 510.07; see also,

---

(...continued)
documents in reaching our conclusion that the Plaintiff is a citizen of Montana, and therefore, we do not address the argument further.

Wilson v. First Nat. Bank of Mankato, supra at 70 (recognizing that Minnesota Statutes Section 510.07 "manifest[s] the legislative intent that actual occupancy of a homestead may be temporarily suspended without loss of exemption rights."). However, the exemption does not "continue for more than five years after such [a] filing," unless the owner re-occupies the homestead. Id.

Here, the Defendants have produced evidence that the Plaintiff placed his house for sale on June 17, 2008, and on November 1, 2008, he leased the house to tenants. See, First Declaration of Peter J. Nickitas ("First Nickitas Decl."), Docket No. 12, Exhibits 4-7; Second Nickitas Dec., supra, Exhibits 1-3.  However, the Defendants have not proffered any evidence that the Plaintiff abandoned his property for more than six (6) consecutive months, prior to the filing of the Complaint.  Nor has the Plaintiff produced any evidence that he filed the notice required by Minnesota Statues Section 510.07, in order to retain his homestead rights.  Accordingly, on the basis of this Record, we are unable to determine whether the Plaintiff's homestead remains in Minnesota.[11]

---

[11]In addition, the Plaintiff argues that he could not be considered a Montana citizen since he "had not even lived in Montana for a six month period prior to the commencement of this complaint -- the time period when a court of foreign jurisdiction typically requires for it to assume jurisdiction." However, "[n]o minimum
(continued...)

In addition, the Plaintiff contends that he is a citizen of the State of Minnesota because he pays Minnesota property taxes, maintains bank accounts in Minnesota, holds a current Minnesota driver's license, and registers his vehicles in Minnesota. See, First Klinkhammer Aff., supra at ¶¶2-4; Second Klinkhammer Aff., supra at ¶¶18 and 21. The Plaintiff had also argued that he had voted in a Minnesota election, but his absentee ballot for the 2008 election was rejected, and his Minnesota voter registration is currently inactive.[12] See, First Nickitas Decl., supra, Exhibit 1 at 1; Exhibit 2 at 1-2; Reply Memorandum, Second Klinkhammer Aff., supra at ¶2.

However, neither those factors, nor the Plaintiff's stated intentions, outweigh the objective evidence which demonstrates that, at the time that the Plaintiff filed his Complaint, he intended to live and work in Montana for an indefinite period of time. Accordingly, we find that the Plaintiff is domiciled in Montana, and that the parties

---

[11](...continued)
period of residence is required" in order to establish domicile. St. Onge v. McNeilus Truck and Mfg., Inc., 645 F. Supp. 280, 282 (D. Minn. 1986), citing Janzen v. Goos, 302 F.2d 421, 425 (8th Cir. 1962); see also, Spurgeon v. Mission State Bank, 151 F.2d 702, 706 (8th Cir. 1945)(noting that, when an individual's physical presence and intent to live in a State concur, the change of domicile is instantaneous), cert. denied, 327 U.S. 782 (1946). Accordingly, we find the Plaintiff's argument to be without merit.

[12]The Plaintiff's absentee ballot was rejected because the absentee ballot witness was not a registered voter in Minnesota. See, First Nickitas Decl., supra, Exhibit 1 at 1; Exhibit 2 at 1.

were diverse at the time this action commenced. Therefore, we recommend that the Plaintiff's Motion to Remand be denied.

NOW, THEREFORE, It is --

RECOMMENDED:

That the Plaintiff's Motion for Remand [Docket No. 8] be denied.


Dated: May 13, 2009         *s/Raymond L. Erickson*
                            Raymond L. Erickson
                            CHIEF U.S. MAGISTRATE JUDGE


NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than June 1, 2009,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than June 1, 2009,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.