UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Michael Klinkhammer,

    Plaintiff,

v.                                                                         Civil No. 08-6320 (JNE/RLE)
                                                                         ORDER

Anishinabe Legal Services, Inc., and
The Northwest Minnesota Foundation,

    Defendants.

---

Michael Ruffenach, Esq., Ruffenach Law Office, appeared for Plaintiff Michael Klinkhammer.

Peter J. Nickitas, Esq., Peter J. Nickitas Law Office, LLC, appeared for Defendant Anishinabe Legal Services, Inc.

V. John Ella, Esq., Jackson Lewis LLP, appeared for Defendant The Northwest Minnesota Foundation.

---

      Michael Klinkhammer brought an action for defamation and wrongful termination in state court against Anishinabe Legal Services, Inc., and The Northwest Minnesota Foundation (collectively, Defendants). Defendants removed the action to this Court on the basis of diversity jurisdiction. The case is before the Court on Defendants' motions for summary judgment. For the reasons set forth below, the Court grants the motions.[1]

## I.    BACKGROUND

      Anishinabe Legal Services (Anishinabe) hired Klinkhammer as a staff attorney in 2003. Anishinabe is a private, non-profit corporation located in Cass Lake, Minnesota, that provides civil legal services to low-income American Indians on the Leech Lake, Red Lake, and White Earth reservations. Anishinabe receives grants from the State of Minnesota, American Indian

---

[1]    Plaintiff withdrew his wrongful termination claim at the January 28, 2010 hearing on Defendants' motions. The Court dismisses this claim with prejudice.

1

tribes, the U.S. Department of Justice (DOJ), and the Legal Services Corporation (LSC), a non-profit established by Congress. In January 2005, Anishinabe's Board of Directors (Board) promoted Klinkhammer to the position of Executive Director.

In June 2007, the DOJ audited two grants that Anishinabe had received in 1998 and 2005 under the Violence Against Women Act (VAWA). The DOJ's audit found $439,204 in unsupported costs, which Anishinabe would be required to repay if it remained unable to show support for them. Some of the costs were unsupported because they were not documented in Anishinabe's accounting records or because Anishinabe could not explain the accounting codes identifying the costs. According to Klinkhammer, many records were missing a result of a change in Anishinabe's bookkeeping system before he became Executive Director and others were missing due to employee embezzlement in 2003.

Klinkhammer testified that Anishinabe's insurer, while denying liability for this loss, agreed to provide coverage for up to $300,000 in legal defense costs. Anishinabe retained Larson Allen, an accounting firm, to reconstruct the missing records, and the DOJ eventually waived all but $69,000 of the costs.

In August 2007, the Board retained The Northwest Minnesota Foundation (NMF) to conduct an "Organizational Effectiveness Assessment" (Assessment) of Anishinabe. NMF is a non-profit organization that provides leadership and organizational development consulting services to other non-profit organizations operating in northwestern Minnesota. An Assessment analyzes an organization's strengths and weaknesses and provides a series of recommendations for improving its effectiveness. According to Klinkhammer, the Board sought the Assessment due to personnel issues at Anishinabe and concerns about Anishinabe's intake process, which some American Indian clients found offensive.

NMF contracted with Dr. Okokon Udo and Dawn Ganje to conduct the Assessment. They first reviewed internal documents, which included Anishinabe's financial statements and fund development plans. NMF then obtained the names of "community stakeholders" from Anishinabe, some of which Klinkhammer provided. Udo and Ganje conducted interviews with Klinkhammer, the Board, other staff members, and community stakeholders. The documents and interviews formed the basis for the Assessment's observations and recommendations.

On March 16, 2008, over the objections of Klinkhammer, NMF presented the results of the Assessment at a public Board meeting. The Board did not review the Assessment before its presentation at the March 16 Board meeting. According to Klinkhammer, the Board meeting was attended by Anishinabe staff and some of their spouses. Klinkhammer bases his defamation claim on the following statements in the Assessment:

1. Grants management is an important responsibility of the Executive Director. Lack of documentation for grants has placed the organization at risk, applications for grants have not been submitted to secure adequate funding, and grants have been applied for late in the cycle, thus impacting the organization's financial stability.

2. There are several responsibilities described in the executive director's job description that are not being effectively executed. This is having a significant impact on the health of the organization.

3. Some staff report the [Executive Director] to be unresponsive to communication and is [sic] unreachable for long periods of time. They state that often decisions are be [sic] made without information which creates more work for them.

4. Legal Services Corporation (LSC) has instituted new reporting requirements for grant recipients which began in 2008. Until recently, staff were unaware of this change. The reporting requirements were necessary to access funding from LSC.

5. Also related to the area of grant financial management is the current review of the VAWA (Violence Against Women Act) funds. The Department of Justice has issued a report on the program questioning costs of $439,204. The audit firm of Larson Allen is in the process of

3

addressing the issue; however, whether the issue can be fully reconciled is not clear. Any amount unsubstantiated may need to be repaid to the funding source. Additionally, fees are being incurred by Larson Allen to reconstruct needed documentation.

Approximately five days after the March 16 Board meeting, the Board asked Klinkhammer to temporarily refrain from taking any personnel action. In May 2005, Klinkhammer sent the Board a letter stating he would resign unless the Board took certain personnel actions. The Board did not take those actions, and Klinkhammer resigned.

## II. DISCUSSION

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The movant "bears the initial responsibility of informing the district court of the basis for its motion," and it must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies its burden, the party opposing the motion must respond by submitting evidentiary materials that "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### A. Subject matter jurisdiction

Klinkhammer contends in his response memorandum that the Court lacks subject matter jurisdiction. A federal district court has original jurisdiction over a civil action where the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of

4

different states. 28 U.S.C. § 1332(a)(1) (2006). In January 2009, Klinkhammer moved for remand on the ground that he was a citizen of Minnesota. In a Report and Recommendation (R&R) dated May 13, 2009, the magistrate judge recommended denial of the motion because Klinkhammer was a citizen of Montana when he commenced this action and at the time of removal. *See Reko v. Creative Promotions, Inc.*, 70 F. Supp. 2d 998, 1002 (D. Minn. 1999) ("Diversity must exist at the time the original action is filed in state court and at the time of removal."). The Court adopted the R&R on July 10, 2009. Klinkhammer now reiterates arguments made in support of his first motion for remand and additionally asserts that he has moved to and opened a law office in Minnesota. To the extent Klinkhammer repeats arguments previously asserted, they are unavailing for the reasons stated in the R&R. *Cf.* D. Minn. LR 7.1(h) (prohibiting motions to reconsider except by express permission of the Court). Moreover, any change in Klinkhammer's citizenship after this action's commencement and removal would not divest the Court of subject matter jurisdiction. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294-95 (1938) ("It uniformly has been held that in a suit properly begun in the federal court the change of citizenship of a party does not oust the jurisdiction. The same rule governs a suit originally brought in a state court and removed to a federal court." (footnotes omitted)). The Court denies Klinkhammer's request for remand.

**B.    Additional discovery**

Klinkhammer next contends that summary judgment is premature because he intends to file a motion to compel discovery of certain financial and personnel data he requested from Defendants. "A party opposing summary judgment who believes that [he] has not had an adequate opportunity to conduct discovery must seek relief pursuant to Federal Rule of Civil Procedure 56(f), which requires the filing of an affidavit with the trial court showing 'what

5

specific facts further discovery might unveil.'" *Stanback v. Best Diversified Prods., Inc.*, 180 F.3d 903, 911 (8th Cir. 1999). Klinkhammer has not moved for a continuance or otherwise met the requirements of Rule 56(f). Moreover, Klinkhammer has not filed a motion to compel, and the deadline for non-dispositive motions passed on February 1, 2010. Defendants' summary judgment motions are not premature.

**C.     Defamation**

Defendants seek summary judgment on the ground that the alleged defamatory statements are protected by a qualified privilege. Under Minnesota law, "[o]ne who makes a defamatory statement will not be held liable if the statement is published under circumstances that make it qualifiedly privileged and if the privilege is not abused." *Bol v. Cole*, 561 N.W.2d 143, 149 (Minn. 1997). "For a defamatory statement to be protected by a qualified privilege, the statement must be made in good faith and 'must be made upon a proper occasion, from a proper motive, and must be based upon reasonable or probable cause.'" *Id.* (quoting *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255-56 (Minn. 1980)). The privilege applies "when a court determines that 'statements made in particular contexts or on certain occasions should be encouraged despite the risk that the statements might be defamatory.'" *Id.* (quoting *Lewis v. Equitable Life Assurance Soc'y of the United States*, 389 N.W.2d 876, 889 (Minn. 1986)). The qualified privilege is not limited to particular types of communication or audiences. *McClure v. Am. Family Mut. Ins. Co.*, 223 F.3d 845, 854 (8th Cir. 2000) (applying Minnesota law). Whether a qualified privilege exists is a question of law. *Id.*

Klinkhammer maintains that presentation of the Assessment at the public Board meeting does not meet the requirements for qualified privilege because Anishinabe staff and their spouses were present. A statement is made in good faith, on a proper occasion, and from a proper motive

if the speaker has a legitimate interest in communicating the statement to the audience. *See id.* ("The statements made by American Family satisfy the conditions of the qualified privilege. They were made to American Family agents, customers, or the public at large. Each statement was thus made to an audience to which American Family had a legitimate interest in communicating its interpretation of appellants' terminations."). It is undisputed that Anishinabe was experiencing "substantial problems" when the Board requested the Assessment. According to Klinkhammer's testimony, those problems included "continual" staff problems, which negatively impacted Anishinabe's work environment. Because communication of the results of the Assessment to Anishinabe staff was part of the resolution of those problems, the Court concludes that the Board had a legitimate interest in communicating the results of the Assessment to Anishinabe staff.

Klinkhammer also challenges communication of the Assessment to spouses of the staff. The mission of Anishinabe, which is funded by grants, is to provide legal services to the American Indian community in the Cass Lake area.[2] To accomplish Anishinabe's mission and ensure future grants, there must be a strong relationship between Anishinabe and the community, of which spouses of the staff are a part. For those reasons, Udo and Ganje interviewed community stakeholders as part of the Assessment. Given the need for a positive relationship between Anishinabe and the community, the Board had a legitimate interest in presenting the results of the Assessment to the community at large, including the spouses.

Klinkhammer also maintains that the allegedly defamatory statements were not based on reasonable or probable cause. Specifically, he argues that NMF should have spoken with him after interviewing the staff because the staff's comments may have been motivated by personal

---

[2]  Klinkhammer testified that Anishinabe served Caucasians living in the region as well as American Indians.

7

animus toward him. Under Minnesota's law of qualified privilege, "[r]easonable grounds can exist if a person has valid reasons for believing a statement, even though the statement later turns out to be false." *Elstrom v. Indep. Sch. Dist. No. 270*, 533 N.W.2d 51, 55 (Minn. Ct. App. 1995). Minnesota courts look to whether investigative steps, including personal questioning of an affected person, were taken to determine the accuracy of a statement when determining whether reasonable grounds for an allegedly defamatory statement exist. *See Wirig v. Kinney Shoe Corp.*, 461 N.W.2d 374, 380 (Minn. 1990).

The record reflects that Ganje and Udo undertook an extensive investigation in conducting the Assessment, including interviewing the staff, community stakeholders, and Klinkhammer. Ganje's interview notes and a declaration submitted by Udo in support of Defendants' motions indicate that the staff told NMF that they had limited contact with Klinkhammer, that he was difficult to reach, that a lack of documentation had placed Anishinabe at risk, and that some grants had been applied for late in the funding cycle.[3] According to Ganje's interview notes, Klinkhammer said he was facing "substantial discontent" in the office, he was very busy, he could not handle all the responsibilities of Executive Director without assistance, and he was behind in grant applications. In short, there are no inconsistencies between Klinkhammer's and the staff's interviews that would have caused NMF to question the accuracy of the staff's comments. Furthermore, Klinkhammer's contention that NMF should have re-interviewed him ignores that the purpose of the Assessment was to document the issues at Anishinabe—including interpersonal issues—and provide recommendations for resolving those issues, not determine who was at fault. The Court concludes that the allegedly defamatory statements in the Assessment were based on reasonable or probable cause.

---

[3] Klinkhammer does not dispute that the staff made the allegedly defamatory statements contained in the Assessment.

Finally, Klinkhammer contends that the alleged defamatory statements were made with actual malice. A qualified privilege may be withdrawn if a plaintiff can show that defamatory statements were made with actual malice. *See Bol*, 561 N.W.2d at 150. To demonstrate actual malice, the plaintiff must prove that the defendant made "the statement 'from ill will and improper motives, or causelessly and wantonly for the purpose of injuring the plaintiff.'" *Wirig*, 461 N.W.2d at 381 (quoting *McKenzie v. William J. Burns Int'l Detective Agency*, 183 N.W. 516, 517 (Minn. 1921)). Although it is a question of fact, actual malice should not be submitted to the jury if there is insufficient evidence to support a finding of malice. *Buchanan v. Minn. State Dep't of Health*, 573 N.W.2d 733, 738 (Minn. Ct. App. 1998).

Klinkhammer maintains that the Assessment was intended to be his employee evaluation, which he asserts was confidential under the terms of the Anishinabe employee handbook, and that publication of the Assessment demonstrates actual malice.[4] The only evidence Klinkhammer identifies in support of the assertion that the Assessment was intended to be his employee evaluation is the late-filed affidavit of Lucille Silk, the chairperson of the Board when the Assessment was conducted.[5] This affidavit does not establish that the Board intended the Assessment to be Klinkhammer's employee evaluation because it states only that the Board decided to conduct the Assessment after having "again failed to perform its performance evaluation" of Klinkhammer after three and a half years. Moreover, even if the Board intended the Assessment to be his employee evaluation, Klinkhammer identifies no evidence indicating that the Board or NMF intended to injure him by publishing the Assessment. Rather, he testified that he and Silk hoped the Assessment would "strengthen[]" his position relative to the staff.

---

[4] The employee handbook is not part of the record.

[5] Because the Court grants the motions for summary judgment even after considering Silk's affidavit, the Court declines to strike it.

9

Klinkhammer has not shown a genuine issue of material fact as to whether Defendants acted with actual malice when they published the Assessment at the public Board meeting. For these reasons, the Court concludes that the allegedly defamatory statements are protected by a qualified privilege.[6] Defendants' motions for summary judgment are granted.

**D.     Sanctions**

Klinkhammer filed Silk's affidavit on January 26, 2010, two days before the hearing on Defendants' motions for summary judgment. The next day, Defendants filed a motion to strike the affidavit as untimely submitted. At the hearing, the Court ordered Klinkhammer to show cause why the Court should not sanction Klinkhammer under its inherent authority by requiring him to pay the attorney fees and costs incurred by Defendants in moving to strike Silk's affidavit. *See Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 745 (8th Cir. 2004).

In his show-cause memorandum, Klinkhammer argues that the 2009 version of Rule 56(c) of the Federal Rules of Civil Procedure permits a party opposing summary judgment to file affidavits "before the hearing day." Klinkhammer does not address the deadlines established by the Local Rules for the District of Minnesota. The Local Rules applicable when Defendants filed their motions for summary judgment required a party responding to a motion for summary judgment to file and serve his memorandum and supporting affidavits "at least 20 days prior to the hearing."[7] D. Minn. LR 7.1(b)(2) (Sept. 2009). Consequently, Silk's affidavit was filed in violation of the Local Rules. Although Klinkhammer argues that the violation was "relatively

---

[6]     Defendants also argue that Klinkhammer's defamation claim fails because he consented to publication of the allegedly defamatory statements and because the statements are opinions, are true, do not refer to Klinkhammer, and were not published. Having found that the statements are subject to a qualified privilege, the Court does not reach Defendants' alternative arguments.

[7]     The current Local Rules, effective December 1, 2009, require a party to file and serve a response memorandum and supporting affidavits 21 days before the hearing. D. Minn. LR 7.1(b)(2).

minor," on November 19, 2009, counsel for Klinkhammer was admonished in this litigation by the magistrate judge to follow the Local Rules in the wake of an earlier violation. Attorneys admitted to practice in this District are required to "read and [be] familiar with" the Local Rules. D. Minn. LR 83.5(c). The Court will not require Klinkhammer to pay the attorney fees and costs incurred by Defendants in filing their joint motion to strike, but counsel for Klinkhammer may not charge or collect any fees from Klinkhammer incurred in the preparation or filing of Silk's affidavit or show-cause memorandum. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) ("[A] federal court has the power to control admission to its bar and to discipline attorneys who appear before it.").

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. NMF's Motion for Summary Judgment [Docket No. 38] is GRANTED.

2. Anishinabe's Motion for Summary Judgment [Docket No. 51] is GRANTED.

3. Defendants' Joint Motion to Strike Affidavit [Docket No. 62] is DENIED.

4. Counsel for Klinkhammer shall not charge or collect any fees from Klinkhammer incurred in the preparation or filing of Silk's affidavit or show-cause memorandum.

5. This action is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: April 5, 2010

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge